346 P.2d 1101

James G. HART, James E. Lindsay, and James T. O'Neil, as members of and constituting the Board of Supervisors of Maricopa County; Virgil Crismon, Hugh Nichols, C. A. Grant, Charles R. Bathurst, Sanford F. Morrison, Percy Smith, Russell A. Shedd, and H. S. (Casey) Abbott, as members of and constituting the Planning and Zoning Commission of Maricopa County; Laurence H. Whitlow, as Executive Director of the Planning and Zoning Commission of Maricopa County; Donald W. Hutton, as Zoning Inspector of Maricopa County; and Roy Thornbrugh, as Chief Deputy Zoning Inspector of Maricopa County, Appellants,

John F. Long, Home Building, Inc., a corporation, Intervenor-Appellant,

v.

BAYLESS INVESTMENT & TRADING COMPANY, an Arizona corporation, Appellee.

No. 6880.

Supreme Court of Arizona.

Nov. 25, 1959.

Rehearing Denied Jan. 12, 1960.

Charles C. Stidham, Maricopa County Atty., Paul Levie, Deputy County Atty., Laurence H. Whitlow, and W. E. Patterson, Phoenix, for appellants.

Stephen B. Rayburn; Stahl, Murphy & Blakely, Phoenix, for intervenor-appellant.

Moore & Romley, Phoenix, for appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Philip M. Haggerty, Phoenix, amici curiae, for O'Malley Investment & Realty Co. and O'Malley Security Corporation.

UDALL, Justice.

This is an appeal from a judgment of the trial court holding invalid the zoning ordinances which regulate the use of property within the unincorporated areas of Maricopa County. The appellee, Bayless Investment and Trading Company, brought a suit in which it was alleged, inter alia, that the zoning ordinances were of no effect because the requisite notice of hearings—both before the Zoning Commission and the Board of Supervisors—had not been given. The trial court, agreeing with this contention, found the ordinances to be void. This appeal was taken by the Board of Supervisors, Zoning Commission, and other named defendants below.

The two basic ordinances struck down by the court below are those upon which the existing structure of zoning regulation in Maricopa County has been built: the first was purportedly adopted by the Board of Supervisors on January 25, 1951; the second, intended to supersede the first, was approved by the Board on June 2, 1952. The authority of the Board of Supervisors, constituting the legislative body of the county, to adopt zoning ordinances is undisputed. This power is derived from "The County Planning and Zoning Act of 1949", Ch. 58 S.L. '49 (now A.R.S. sections 11-801 to 11-830), the validity and constitutionality of which is neither involved nor questioned in any way in these proceedings. However, it must be recognized that the authority granted to the county supervisors in this respect is limited by the terms of section 3 thereof (now A.R.S. § 11-802), which requires that a zoning ordinance, to be effective, must be enacted in accordance with the provisions of the Zoning Act. It is asserted by the appellee (plaintiff below) that the Maricopa County ordinances must be held to be of no effect because of failure of the Board to comply with the requirements of this enabling Act. The primary question now before us on appeal is whether the trial court was correct in sustaining this contention and invalidating said ordinances.

For convenience, the parties will be designated as follows: the appellee, Bayless Investment and Trading Company, will be called plaintiff; the Board of Supervisors will be referred to as the Board, and the Maricopa Zoning Commission as the Commission. The various appellants and the intervenor-appellant, as a group, will be denominated defendants. "The County Planning and Zoning Act of 1949" will be called the Zoning Act; and the two ordinances in question will be referred to as the 1951 Ordinance and the 1952 Ordinance respectively.

Plaintiff (Bayless) in its amended complaint stated three sparate causes of action: (1) it sought injunctive relief requesting, inter alia, that the Zoning Ordinance be declared to be of no force and effect and that defendants be enjoined from prosecuting plaintiff under the enforcement provisions of the Zoning Act (Sec. 18; now A.R.S. § 11-808); (2) mandamus was asked to compel the Zoning Inspector and his deputy to forthwith issue to plaintiff a building permit for the erection of a shopping center on Lot 1 of section 30, Township 2 North, Range 2 East, herein referred to as the "Bayless Parcel"; (3) by certiorari a judgment was sought declaring that Supervisor James T. O'Neil, in casting his vote against granting the necessary proposed zoning change, had acted arbitrarily, capriciously, and oppressively. It would appear, however, that stipulations entered into by the parties pending this appeal have made these special forms of relief unnecessary. Therefore, as we see it, the plaintiff, at this stage of the proceedings, is interested solely in obtaining a decision from this Court upholding the declaration of the invalidity of the zoning regulations by the lower court.

In their answer to the amended complaint the defendants, in addition to asserting the legality of the ordinances, raised certain affirmative defenses which challenged the standing of this particular plaintiff to attack the ordinances in question. The allegations were that, even if the ordinances were defective, the plaintiff was barred from contesting their validity because of laches, estoppel, waiver, and lack of equity. However, after setting out these defenses, the defendants also presented a counterclaim asking for a judical determination of the question whether the ordinances were valid and enforceable. This counterclaim for declaratory relief squarely presented the issue of the validity of the ordinances in question. Therefore the objections raised as to the plaintiff's standing—which appear to be bottomed upon respectable authority—have become immaterial. It is true that this court will not rule upon the constitutionality or validity of an existing law or ordinance if the legal issues presented can be disposed of on some other grounds. In this case, however, we have no such alternative. Both plaintiff and de-

fendants have asked for an adjudication of the question whether either of the county zoning ordinances is effective. Therefore, we shall proceed to a resolution of that question without considering the now irrelevant issue of the standing of this plaintiff to challenge the validity of said ordinances.

 Before dealing with the merits of plaintiff's contentions we must first dispose of a point raised by the defense. Defendants take the position that since the ordinances are valid on their face, this court cannot—or will not—inquire into any alleged defects in the procedures leading up to final adoption by the Board. For this proposition we are cited to the so-called "enrolled bill rule", succinctly set out in Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854, 865, viz.:

> "There is a line of authorities adhering to the rule that an enrolled bill imports verity, and it is conclusively presumed that the constitutionally prescribed details of legislative procedure leading to its passage and enrollment have been complied with. 50 Am.Jur., Statutes, section 149. Arizona has adopted this rule * * *."

The principle referred to is one of comity between the separate constitutional branches of government. It is based on the premise the the judiciary should be duly respectful of the legislature, since the two departments are of equal dignity in the constitutional scheme. In this case, however, we are not dealing with the constitutionality of a legislative enactment, but rather with the validity of a county ordinance. The authority of a county board of supervisors is in no way parallel to that of the legislature. It is a recognized principle of constitutional law that constitutions are not grants of, but limitations on, the powers of the legislature; that is, the legislature has all those powers not specifically precluded by constitutional terms. Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436; Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808; Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779. The law-making powers of the county, on the other hand, are entirely derivative. The Board of Supervisors can exercise only those powers specifically ceded to it by the legislature. Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041; Maricopa County v. Southern Pacific Co., 63 Ariz. 342, 162 P.2d 619; Hartford Accident & Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328; Board of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343; Board of Control of State of Arizona v. Buckstegge, 18 Ariz. 277, 158 P. 837. By the Zoning Act, certain authority was conferred upon the Board, but subject to those express conditions imposed by the same Act. An attempted exercise of that authority without compliance with the statutory conditions precedent is utterly void and of no effect.

It is true that where there is no factual evidence presented to show that such an ordinance was not properly adopted, such an enactment is entitled to the presumption of regularity which attaches to all official acts. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138; Cf. Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. However, when, as here, facts are shown which rebut that presumption, the courts will exercise their jurisdiction to determine whether the necessary statutory prerequisites have been complied with.

The Zoning Act—as originally enacted in 1949—required that two separate public hearings be held prior to the adoption or amendment of a zoning ordinance: one before the Zoning Commission, after which the Commission's recommendation might be referred to the Board (Sec. 8) (now A.R.S. § 11–822); then a second hearing before the Board, preceding the enactment into law of the ordinance (Sec. 9) (now A.R.S. § 11–823). In each case the statute specified the notice of the hearing which must be given:

Sec. 8—" * * * the commission shall hold at least one public hearing thereon, after giving at least fifteen days notice thereof by publication in a newspaper of general circulation in the county seat. * * * "

Sec. 9—" * * * At least fifteen days notice of the hearing [by the Board] shall be given by one publication in a newspaper of general circulation in the county seat."

Section 2, the definition section (now A.R.S. § 11–801), defines "newspaper of general circulation in the county seat" as: " * * * a daily newspaper if one is published in the county seat. If no daily newspaper is published, a weekly newspaper may be used." It should be noted that the ordinances in question concern only Maricopa County, of which the county seat is Phoenix, where two daily newspapers are published.

Chronologically stated, the following are the steps taken in the purported adoption of the ordinances in question:

*1951 Ordinance:*

A. *Zoning Commission:*

Notice of hearing published: May 23, 1950, in Phoenix, Gazette; (one issue only).

May 24, 1950, in Arizona Republic.

Hearing held June 7, 1950:

Recommended ordinance referred to Board on September 6, 1950.

B. *Board of Supervisors:*

Notice of hearing published: Nov. 17, 1950, in Weekly Gazette.

Also, news article appeared, Nov. 18, 1950, in the Arizona Republic, announcing the date set.

Hearing held December 5, 1950:

Ordinance adopted by the Board on January 25, 1951, to become effective 90 days thereafter.

*1952 Ordinance:*

A. *Zoning Commission:* We can find no record of any formal notice of hearing given, or that a public hearing was actually held, or that a recommended ordinance was referred to the Board.

B. *Board of Supervisors:*

Notice of hearing published: By Weekly Gazette in the issues of April 11th, 18th, and 25th, and the issue of May 2, 1952.

Hearing held May 5, 1952:

Ordinance purportedly adopted by the Board on June 2, 1952, to become effective 90 days thereafter.

—————◆—————

Plaintiff asserts that the procedure followed, as set forth above, were fatally defective in the following respects:

1. The notice of the hearings given was insufficient in every instance in that the required number of publications was never made;

2. The notice of hearings before the Board, both in 1950 and in 1952, was inadequate in that same was published in a weekly, rather than a daily, newspaper;

3. As to the 1952 ordinance, there is no record of notice or of a hearing before the Zoning Commission prior to the purported adoption;

4. In regard to the 1951 ordinance, further unnoticed hearings were held—by both the Commission and the Board—subsequent to the hearings for which notice was published and prior to adoption of the ordinances.

These contentions will be considered *seriatim* to determine whether there was a failure to comply with the statutorily prescribed procedures:

1. *Number of publications.* As previously noted, the enabling statute (as originally enacted) required "fifteen days' notice" of the zoning hearings. This requirement was in effect at the time of the purported adoption of the ordinances in question. The issue raised by the parties herein is whether the statute required more than a single publication of the notice at least fifteen days before each hearing.

Plaintiff claims that "fifteen days notice" necessitates thirteen separate publications, commencing fifteen or more days prior to the hearing. In support of this position primary reliance is placed upon another statutory provision, A.C.A. Sec. 18–104 (now revised in A.R.S. § 39–203), which gives the general rule for construction of notice publication provisions:

*"Number of publications where time specified.*—When notice is provided by law to be given for a specified number of days, or weeks, if published in a daily paper, it must be published six (6) days out of seven (7) in a week; * * * and six (6) insertions per week in daily papers shall constitute seven (7) days' notice."

Defendants and the amicus curiae, who submitted an excellent brief on this point, contend that the statutory language requires only one publication, and that the statute quoted (A.C.A. Sec. 18–104, supra), is not relevant because it applies only "unless otherwise specifically provided" (A.C.A. § 18–102). They further assert that the conclusion is inescapable that the Zoning Act provisions do specifically state the number of publications, *i. e. one,* and a number of cases are cited in support of this proposition.

We deem it unnecessary, under the circumstances of this case, to resolve this intriguing question. The revisors of the Arizona Statutes in 1956 have eliminated the ambiguity, as far as future proceedings are concerned, by adding the word "one", so that the phrase now reads: "fifteen days notice thereof by one publication." See A.R.S. §§ 11–822 and 11–823. In view of the disposition to be made of this appeal on other basic grounds, the issue of what the statute meant prior to its revision need not be reached.

2. *Newspaper of publication.* It is clear from the record that the Board of Supervisors was remiss in not publishing the required notice in "a newspaper of general circulation in the county seat" for the hearing on either ordinance. The statutory language is unequivocal. Sec. 2 (now A.R.S. § 11–801, subd. 5). "A newspaper of general circulation" in Maricopa County, for purposes of the Zoning Act, necessarily means either the Arizona Republic or the Phoenix Gazette, since these are the only daily newspapers published in the county seat. The Board makes no attempt to defend the failure to comply with this requirement as far as the 1952 ordinance is concerned, as the only notices published were those appearing in the Weekly Gazette.

As appears from the chronological tabulation heretofore set out, the only publication of notice which satisfied this statutory requirement was that which preceded the hearing before the Zoning Com-

mission in 1950. Defendants assert that the news article which appeared in the Arizona Republic on November 18, 1950, was a sufficient compliance with the statute in regard to the December 5, 1950, hearing before the Board, and that—even though the 1952 ordinance be declared invalid—the 1951 ordinance is entirely proper in this respect. We cannot agree. The law contemplates an official notice inserted as such. In Gendron v. Borough of Naugatuck, 21 Conn.Sup. 78, 144 A.2d 818, 823, the court, dealing with a similar notice requirement for a zoning hearing, said:

"* * * An essential element of a publication or legal notice is that it appears on its face to be caused to be given or published by competent authority. 39 Am.Jur. 237, § 9. It is of compelling significance that newspapers, although possessed of great force in reaching the public, here make no claim for the sufficiency of their reader copy to constitute legal notice. * * [It is a] fact that usage, custom and propriety of the business of publishing preclude as either an effective, proper or accepted method the designed or accidental use of news columns as a suitable or sufficient vehicle for publication and notification as was here required. * * *"

■ This Court has held that, where a jurisdictional notice is required to be given in a certain manner, any means other than that prescribed is ineffective. See Yuma County v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868. This is so even though the intended recipient of that notice does in fact acquire the knowledge contemplated by the law. Such a rule is no mere "legal technicality"; rather it is a fundamental safeguard assuring each citizen that he will be afforded due process of law. Nor may the requirement be relaxed merely because of a showing that certain complaining parties did have actual notice of the proceeding.

We hold the evidence amply sustains the trial court's finding and legal conclusion that the Board failed to comply with the statute in that it did not give the requisite official notice in a daily newspaper.

■ 3. *Failure to hold noticed hearing before Zoning Commission.* There is nothing in the record to indicate that a formal hearing, after requisite notice, was held before the Zoning Commission prior to the adoption of the 1952 ordinance. It is not material that the 1952 enactment is sometimes designated in the record as an amendment rather than a new ordinance, for the plain terms of the statute require that equal formality attend the amendment of an existing ordinance. Sec. 8, now A.R.S. § 11–822. We hold the purported adoption of the 1952 ordinance was defective in this respect.

■ 4. *Intervening unnoticed hearings.* Plaintiff contends, in regard to the 1951 ordinance, that both the Commission and the Board violated the Zoning Act by holding unnoticed hearings subsequent to the hearings for which notice was published and prior to the adoption of the zoning ordinance. We find no support in the statute for this contention. The requirement is for a public hearing, to be held after due notice, but the Act does not state that either the Commission or the Board must act immediately upon the matters presented at the hearing; nor does it specifically preclude a further independent investigation by either body into those sources of information which may be helpful.

■ As has been noted above, we are here concerned with an exercise of a legislative power delegated to the Commission and the Board. It should be borne in mind that there is a fundamental distinction, as regards due process of law, between a legislative hearing and an adversary proceeding. In a hearing of the former type, due process requires only that all interested parties be allowed to present their views and arguments. City of Corpus Christi v. Jones, Tex.Civ.App., 144 S.W.2d 388; Hamilton Co. v. Louisville & Jefferson County Planning and Zoning Commission, Ky., 287 S.W.2d 434; Jacques v. Zoning Board of Review, 64 R.I. 284, 12 A.2d 222; Cf. A.R.S. § 41–1002 (concerning hearings before rule-making administrative bodies), and Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 307, 53 S.Ct. 350, 355, 77 L.Ed. 796. It is not necessary, in order to provide due process, that interested parties be present at all stages of the legislative deliberations. Such a requirement is properly applicable only to adversary proceedings.

■ The purpose of the various notice and hearing provisions in the Zoning Act is to allow interested parties an opportunity to be heard. If this opportunity is given as required by law,—either on the date for which notice has been given, or, if necessary, on such later date as is duly set for the continued hearing—then it is of no moment that the Commission or the Board might indulge in further deliberations for a reasonable time before proceeding to the formal adoption of an ordinance.

We hold that neither official body violated the Zoning Act by holding such additional hearings without further notice.

In summation, the foregoing analysis reveals that compliance with the notice and hearing requisites—for both ordinances—was defective in the following particulars: *1952 Ordinance:* 1. No official notice given or hearing held before the Zoning Commission; 2. no publication of notice in a daily newspaper. *1951 Ordinance:* No publication of official notice in a daily newspaper prior to the hearing before the Board.

It is clear from this record that the mandate of the Zoning Act was ignored. The question then arises whether these procedural defects are of such gravity that the ordinances must be invalidated.

Although, as shown above, this Court is not precluded from inquiring into the regularity of the proceedings attendant to the enactment of a county ordinance, such ordinance will not be set aside unless defects are shown which are jurisdictional in nature. The remaining question, then, is whether the failure to comply with the notice and hearing conditions of the Zoning Act left the Commission and Board without jurisdiction to adopt either or both of the ordinances in question.

We have not previously been presented with this precise question; however, this Court has shown a predilection in analogous cases to demand strict compliance with statutory requirements concerning the zoning aspect of the police power. In Kubby v. Hammond, 68 Ariz. 17, 22, 198 P.2d 134, 138, we said:

"Zoning ordinances, being in derogation of common law property rights, will be strictly construed and any ambiguity or uncertainty decided in favor of property owners."

That case dealt with the construction of an ordinance, rather than with the question of its validity. However, we feel that the principle stated therein is applicable in this case.

In Wood v. Town of Avondale, 72 Ariz. 217, 219, 232 P.2d 963, 964, we said:

"Property owners are entitled to notice before the passage of a zoning ordinance which would limit the use of their property. Berratta v. Sales, 82 Cal.App. 324, 255 P. 538; Makrauer v. Board of Adjustment of City of Tulsa, 200 Okl. 285, 193 P.2d 291. * * *."

The Wood case was quoted with approval in 3 Metzenbaum, Law of Zoning 1893, wherein it is written, at page 1889:

"Since the enactment of zoning regulations finds its authority through the police power, and since the police power must come by way of delegation from the state * * * it is axiomatic that, in the passage of zoning ordinances, the municipalities and other political subdivisions must scrupulously comply with the state statutes which delegate that power."

In other jurisdictions, courts which have been confronted with this issue have found, almost without exception, that compliance with statutory requirements as to hearing and notice is jurisdictional and that ordinances which have not been adopted in conformity with the enabling Act are void.

Hurst v. City of Burlingame, 207 Cal. 134, 277 P. 308; Kelly v. City of Philadelphia, 382 Pa. 459, 115 A.2d 238; Rhode Island Home Builders v. Budlong Rose Co., 77 R. I. 147, 74 A.2d 237; Treat v. Town Plan & Zoning Commission, 145 Conn. 136, 139 A.2d 601; Gendron v. Borough of Naugatuck, supra.

In the Hurst case, supra, the Supreme Court of California held:

" * * * The Zoning Law vests in the legislative body of the city broad discretionary power, but when the method for the exercise of the power is prescribed by the statute such method is the measure of the power to act. Zottman v. City and County of San Francisco, 20 Cal. 96, 81 Am.Dec. 96. The Legislature may have considered, and very properly so, that in the enactment of a zoning ordinance property rights must be seriously affected. While the detriment flowing from a validly enacted zoning measure would be damnum absque injuria, the requirement of notice and hearing provided by the statute may not be treated lightly or at all disregarded. When the statute requires notice and hearing as to the possible effect of a zoning law upon property rights the action of the legislative body becomes quasi judicial in character, and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due

process and may not be dispensed with." 277 P. 308, 311.

In the Rhode Island Home Builders case, supra, the Supreme Court held:

" * * * The provisions relating to first advertising the notice of public hearing on a proposed amendment are in form and substance mandatory conditions precedent to the proper exercise of the power thus delegated to the council. A failure to conform thereto is not to be treated as a mere irregularity in the service of a personal notice which may be waived. In our judgment such provision is not directory or intended to notify only remonstrants who may actually appear at the hearing, but contemplates other possible remonstrants and is a condition precedent to the jurisdiction or power of the council to make any valid enactment in that regard." 74 A.2d 239.

Defendants cite Walker v. City of Biloxi, 229 Miss. 890, 92 So.2d 227, in support of their assertion that such procedural infirmities should be overlooked. In that case the Mississippi court conceded that the manner in which the zoning ordinance was adopted did not comply with the law. However, it was held on public policy grounds that such noncompliance would not invalidate an ordinance which had been in effect for some seventeen years.

■ ■ Although we recognize that laches may, under some circumstances, bar an individual complainant from asserting the invalidity of an ordinance, we cannot agree that mere passage of time will suffice to instill life into an enactment which was void at its inception. We hold that both the 1951 and the 1952 ordinances are void and of no effect.

Judgment, in these respects, is affirmed.

PHELPS, C. J., and STRUCKMEYER, JOHNSON, and BERNSTEIN, JJ., concurring.