558 P.2d 981

**Gerard ANDERSON, a single man, as Trustee for the Anderson Children Trust, Appellant,**

v.

**PIMA COUNTY, Arizona, a body politic, Joseph Castillo, E. S. "Bud" Walker, Ron Asta, Sam Lena, and Conrad Joyner, Members of the Board of Supervisors of Pima County, Arizona, Appellees.**

No. 2 CA–CIV 2171.

Court of Appeals of Arizona, Division 2.

Nov. 22, 1976.

Rehearing Denied Dec. 22, 1976.

Hoffman, Anderson & Brown, by Gerard Anderson, Tucson, for appellant.

Dennis W. DeConcini, Pima County Atty., by Albin R. Krietz, Deputy County Atty., Tucson, for appellees.

OPINION

KRUCKER, Judge.

Appellant instituted a civil action to obtain an order requiring Pima County and the members of its Board of Supervisors to approve the final plat filed by appellant to subdivide real property located in Pima

County. The trial court dismissed the complaint with prejudice, finding that the Supervisors had adopted a policy regarding assurances of the installation of off-site improvements in proposed subdivisions and that unless that policy were satisfied the Supervisors were not required to approve appellant's final plat, despite the fact that it complied with all the other rules and regulations pertaining to the subdivision of property in Pima County. Appellant brings this challenge to the Supervisors' authority to institute a policy which requires assurances for the installation of off-site improvements in a proposed subdivision without following the statutory procedural requirements.

On June 13, 1975, A.R.S. Sec. 11–806.01 became effective enabling counties to pass ordinances which require assurances for the installation of off-site improvements in subdivision plats. The applicable language states in pertinent part:

\* \* \* \* \* \*

"E. The commission shall recommend to the board and the board shall adopt general rules and regulations of uniform application governing plats and subdivisions of land within its area of jurisdiction. The regulations adopted shall secure and provide for the proper arrangement of streets or other highways in relation to existing or planned streets or highways or to the official map for adequate and convenient open spaces for traffic, utilities, drainage, access of fire fighting apparatus, recreation, light and air. The general rules and regulations may provide for the modification thereof by the commission in planned area development or specific cases where unusual topographical or other exceptional conditions may require such action. The regulations shall include provisions as to the extent to which streets and other highways shall be graded and improved and to which water, sewer, or other utility mains, piping or other facilities shall be installed or provided for on the plat as a condition precedent to the approval of the final plat.

F. Boards of supervisors of counties shall prepare specifications and make orders, inspections, examinations and certificates as may be necessary to protect and complete the provisions and make them effective. The regulations shall require the posting of performance bonds, assurances or such other security as may be appropriate and necessary to assure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction.

G. Before adoption of rules and regulations by the board or any amendment thereof as provided in this article, a public hearing shall be held by the commission. A copy of the rules and regulations shall be certified by the commission to the county board of supervisors which shall hold a public hearing after notice of time and place has been given by one publication fifteen days prior to the public hearing in a newspaper of general circulation in the county."

On January 5, 1976, the Pima County Board of Supervisors attempted to comply with the provisions of this statute and passed a resolution that a subdivider should submit proposed assurances of the installation of off-site improvements set forth in a plat, and, if those assurances are satisfactory to the Supervisors, they will approve those assurances and consider the plat.[1]

Appellant wants us to declare such action by the Board a nullity since the requisite public hearing with 15 days' notice to the public as required in A.R.S. Sec. 11–806.-01(G) was not given. The county's position is that the measure passed by the Board was an "interim" zoning ordinance which, pursuant to the police power, was valid pending the Board's adoption of a zoning

---

1. It is undisputed that appellant's plat satisfied the requirements of the Pima County Zoning ordinance and all other subdivision require- ments of Pima County except the requirement of assurance as adopted in the interim zoning ordinance of January 5, 1976.

ordinance in compliance with the statutory procedure.

■ Appellees point out authority to the effect that interim zoning ordinances are constitutionally permissible and that the exercise of temporary restrictions pending the adoption of permanent zoning controls is the exercise of the police power and will be presumed to be valid unless the particular exercise itself is unreasonable or not related to the health, safety or general welfare of the community. Freilich, Interim Development Controls: Essential Tools for Implementing Flexible Planning and Zoning, 49 J.Urban L. 65 (1971). *See also*, 30 A.L.R.3d 1196 (1970). However, the validity of such interim zoning ordinances must rest on the standard zoning enabling act. As stated in the Arizona landmark case of *Hart v. Bayless Investment & Trading Company*, 86 Ariz. 379, 346 P.2d 1101 (1959), not cited by either party:

> "The authority of the Board of Supervisors, constituting the legislative body of the county, to adopt zoning ordinances is undisputed. This power is derived from 'The County Planning and Zoning Act of 1949', Ch. 58 S.L. '49 (now A.R.S. sections 11–801 to 11–830), the validity and constitutionality of which is neither involved nor questioned in any way in these proceedings. However, it must be recognized that the authority granted to the county supervisors in this respect is limited by the terms of section 3 thereof (now A.R.S. § 11–802), which requires that a zoning ordinance, to be effective, must be enacted in accordance with the provisions of the Zoning Act." 86 Ariz. at 382, 346 P.2d at 1104.

■ Therefore, the validity of the interim zoning ordinance depends on whether or not the Board of Supervisors had the authority, prior to the enactment of Sec. 11–806.01, to require assurances. If the legislature had previously given such authority to the Board, then, in its exercise of such authority and police power, it could require such assurances in the interim act. However, if the enactment of A.R.S. Sec. 11–806.01 was

a new grant of authority to the Board, it had no authority to require such assurances; therefore, the only way it could exercise authority would be by following the grant of authority specifically set forth in the new statute.

We have traced the history of the statute and find that the language with which we now deal formerly was included in Sec. 11–806.01(E) and made no provision at all for the requiring of the performance bonds, assurances, or any other security to assure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction. There is much applicable language to support our position in *Hart v. Bayless Investment & Trading Company*, supra. In that case, our Supreme Court stated its preference to demand strict compliance with statutory requirements concerning the zoning aspect of police power, citing *Kubby v. Hammond*, 68 Ariz. 17, 198 P.2d 134 (1948). Citing 3 Metzenbaum, Law of Zoning, 1893 at 1889, the court said:

> " 'Since the enactment of zoning regulations finds its authority through the police power, and since the police power must come by way of delegation from the state * * * it is axiomatic that, in the passage of zoning ordinances, the municipalities and other political subdivisions must scrupulously comply with the state statutes which delegate that power.' "

A lengthy list of citations was set forth by the court for the proposition that compliance with statutory requirements as to hearing and notice is jurisdictional and that ordinances which have not been adopted in conformity with the enabling act are void. We find this principle applicable here. Since the Board's power to legislate in the zoning area comes within the exercise of its police power, which in turn is derived from the grant of authority by the State, we find that the Board was without authority to demand such assurances in the absence of compliance with the statutory scheme. We

hold therefore that the trial court erred in dismissing the complaint.

The judgment of dismissal is reversed with directions to enter judgment in favor of appellant requiring the appellees to approve appellant's plat.

HATHAWAY, J., concurs.

HOWARD, Chief Judge, dissenting.

I am unable to agree with the majority opinion. The final plat was submitted for approval after the effective date of A.R.S. Sec. 11–806.01. Subsection F thereof contains a legislative mandate. No discretion is left to the Board of Supervisors as to the content of their regulations. The regulations passed by the Board must require by way of performance bond or otherwise a proper assurance from the subdivider that streets, sewers, electric and water utilities, drainage, flood control, etc., are actually installed and constructed. The purpose of these requirements are obvious in view of the rampant land fraud that has occurred in this state. Too often land in this state has been subdivided and lots sold to unwary purchasers who soon find that such improvements cannot and will not be constructed. It is clearly the intent of the legislature that after June 13, 1975 the Board of Supervisors cannot approve a subdivision plat unless the necessary assurances have been made. When appellant filed his final plat for approval he did so under the new statute and therefore with knowledge of the existence of the new statute. He cannot now rely upon the old statute to require approval of his plat. Had the Board promulgated rules and regulations pursuant to the statute and noticed them for public hearing pursuant to subsection G of A.R.S. Sec. 11–806.01, it could have delayed approval of the plat pending the adoption of the regulations. *Chicago Title & Trust Co. v. Village of Palatine*, 22 Ill.App.2d 264, 160 N.E.2d 697 (1959). The fact that it did not do so in this case cannot operate to require the Board to approve a plat which it has no power to approve.

I would affirm.