NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PIMA COUNTY, *Plaintiff/Appellant,*

*v.*

CITY OF TUCSON, *Defendant/Appellee.*

No. 1 CA-CV 24-0057

FILED 10-10-2024

Appeal from the Superior Court in Maricopa County
No. CV2022-001141
The Honorable Randall H. Warner, Judge

**AFFIRMED IN PART AND REVERSED IN PART**

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Brett W. Johnson, Colin P. Ahler, Ian R. Joyce
*Counsel for Plaintiff/Appellant*

Gust Rosenfeld, P.L.C., Phoenix
By Charles W. Wirken
*Co-Counsel for Defendant/Appellee*

Office of the Tucson City Attorney, Tucson
By Michael Rankin, Christopher Avery
*Co-Counsel for Defendant/Appellee*

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

**K I L E Y**, Judge:

**¶1**　　　In this unusual appeal, the party that successfully moved for summary judgment challenges the resulting judgment entered in its favor. Pima County (the "County") challenges, as unduly narrow, the scope of the relief granted by the judgment, and further challenges the court's decision to award attorney fees in an amount substantially less than what the County sought. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　The City of Tucson (the "City") operates Tucson Water ("TW"), a water utility that services not only municipal residents, but those living in unincorporated areas outside city limits.

**¶3**　　　In June 2021, the Tucson City Council (the "Council") enacted Ordinance No. 11881 (the "2021 Ordinance"), which imposed higher water rate charges on TW customers living outside city limits than on those within. Although the new rates were "different for different classes of users," the new rates were "generally 10% higher than rates for similar customers within city limits." The 2021 Ordinance made certain exceptions; according to the City, "Native American tribes and the Tucson Unified School District" were exempted "from the rate increase." When it enacted the 2021 Ordinance, the Council directed staff to "complete a broad cost of service analysis based on rates adopted." The City then retained Raftelis Financial Consultants, Inc. ("Raftelis") to conduct the cost-of-service analysis.

**¶4**　　　The County challenged the 2021 Ordinance, asserting, *inter alia*, that it violated an Arizona statute that requires water utilities to charge only "just and reasonable" rates and to publicize written data supporting any rate increase before the increase goes into effect. *See* A.R.S. § 9-511.01(A)(1), (E). The commissioning of Raftelis to complete a study did not satisfy statutory requirements, the County argued, because the

differential rates were adopted before the study was commissioned. Indeed, as the subsequent Raftelis report itself acknowledged, the purpose of the study "was to provide support for already-determined rates."

¶5 The County's complaint (the "Complaint") sought declaratory and injunctive relief on a variety of grounds. As relevant here, Count One of the Complaint sought a declaration that the 2021 Ordinance "violates A.R.S. § 9-511.01" and an injunction barring the City "from enforcing [the 2021 Ordinance's] discriminatory rates." Counts Three and Four asserted that the 2021 Ordinance improperly "discriminate[s] between similarly situated [TW] customers," including "Native Americans and non-Native Americans," in violation of constitutional equal protection guarantees.

¶6 The City moved to dismiss the equal protection claims set forth in Counts Three and Four, citing case law for the proposition that, as a political subdivision of a state, the County cannot assert such claims because it is not a "person" within the meaning of applicable constitutional provisions. In response, the County maintained that the *jus tertii* doctrine entitled it to "assert equal protection claims on behalf of [its] citizens."[1] Finding the *jus tertii* doctrine inapplicable because aggrieved Pima County residents were able to assert discrimination claims "on their own behalf," the superior court dismissed Counts Three and Four.

¶7 In March 2023, the Council adopted Ordinance No. 11993 (the "2023 Ordinance") providing that "Governmental Customers," including the County, "shall not be charged the differential rate." Less than two weeks later, the City filed a motion for summary judgment on all of the County's claims, asserting that because the 2023 Ordinance expressly exempted the County "from the differential rate," the County's challenge to the differential rate was now moot. Acknowledging that a defendant "[u]sually . . . cannot by its own voluntary conduct 'moot' a case," the City argued that this principle does not apply here because the City is a governmental entity. "[V]oluntary cessation of [the] challenged conduct" by a "private" defendant, the City maintained, will not moot a case because the defendant "would be free to resume the conduct" after securing the

---

[1] The *jus tertii* doctrine permits a litigant to assert a violation of a third party's constitutional rights if the litigant has "a substantial relationship to the third party," the third party is "unable to assert the constitutional rights on [his or her] own behalf," and the failure to grant standing to the litigant would "dilute the rights of the third party." *Arcadia Osborn Neighborhood v. Clear Channel Outdoor, LLC*, 256 Ariz. 88, ¶ 20 (App. 2023).

case's dismissal. The concern that a defendant would act in bad faith by temporarily ceasing wrongful conduct only long enough to secure a dismissal on mootness grounds before resuming the conduct is not present here, the City insisted, because "governmental defendants" are "presume[d]" to be "acting in good faith."

¶8             In response, the County argued that the City's "newfound mootness defense" should be rejected because the 2023 Ordinance constitutes "mere litigation posturing" since it "was specifically" adopted "to end this case."

¶9             The superior court denied the City's motion, finding no basis to depart from "the usual rule" that a defendant cannot moot a plaintiff's claim by its "own voluntary conduct." The court further noted that the 2023 Ordinance "affects only Pima County" while "the differential rates remain in place for residents and businesses outside Tucson city limits." "Although Pima County lacks standing to represent its residents' interests," the court held, "there is overlap between the legality of differential rates as to Pima County and as to others." Accordingly, the court concluded, "[d]eciding this case" on the merits rather than dismissing the County's claims on mootness grounds "would . . . promote judicial efficiency."

¶10            Meanwhile, the County moved for summary judgment on Count One of the Complaint, arguing, *inter alia*, that the City failed to comply with A.R.S. § 9-511.01's mandate that rates be set at an amount "just and reasonable" because it adopted the differential rates set forth in the 2021 Ordinance without a cost-of-service study. As a matter of law, the County asserted, "differential rates must be cost-based," and "the City's failure to consider cost-of-service" before enacting the 2021 Ordinance "renders [its] rates unjust and unreasonable."

¶11            In response, the City contended that whether the differential rates set forth in the 2021 Ordinance are "just and reasonable" as required by A.R.S. § 9-511.01 was a question of fact that could not be resolved on summary judgment.

¶12            Determining that "A.R.S. § 9-511.01 requires water rates to be grounded in cost," the superior court held that the 2021 Ordinance violated the statute because the City did not use "cost data" when setting the "challenged rates." The court therefore granted summary judgment in favor of the County on Count One and dismissed the remaining counts of the Complaint as moot.

**¶13** The County lodged a proposed form of judgment containing, as relevant here, the following language:

> The Court enters Judgment in favor of [the County] and against all Defendants on [the County's] claim asserting a violation of A.R.S. § 9-511.01 (Count 1). In connection with and as part of this Judgment:
>
> a. Pursuant to A.R.S. § 12-1831, the Court hereby adjudges and declares that the provisions in Ordinance No. 11881 establishing differential water rates for *customers in unincorporated Pima County* are illegal and unenforceable;
>
> b. The Court permanently enjoins Defendants from enforcing the provisions in Ordinance No. 11881 establishing differential water rates for *customers in unincorporated Pima County*;
>
> c. As Ordinance No. 11881 was illegal and unenforceable when implemented, the Court orders the individual Defendants, in their official capacities, to cause [the City] *to refund, reimburse, or credit any differential rate payments that Tucson Water customers have made* pursuant to Ordinance No. 11881

(emphasis added).

**¶14** The City objected to the proposed form of judgment lodged by the County, asserting that the judgment cannot properly "provide relief to [TW] customers who are not parties to this action" because the court had already ruled that the County "does not have standing to represent the interests of its residents." Accordingly, the City asserted, the judgment "must be limited to provide relief only to [the County]." The court sustained the City's objection and accepted the City's proposed revisions to the form of judgment lodged by the County.

**¶15** Meanwhile, the County filed an application for attorney fees and costs, seeking a fee award of $648,424.35. Although the superior court found "counsel's billing rates to be reasonable and justified" in light of "counsel's skill and experience" and the nature of the case, the court nonetheless sustained the City's objection to the reasonableness of the claimed amount. Finding that the billing records reflected both "excessive lawyer time . . . devoted to this case" and non-compensable time spent on unsuccessful claims, the court determined that "a reasonable amount" of fees was "45% of the [amount] request[ed]."

¶16       After resolving the parties' dispute over the County's fee application, the court entered final judgment (the "Judgment") providing in part as follows:

> The Court enters Judgment in favor of [the County] and against all Defendants on [the County's] claim asserting a violation of A.R.S. § 9-511.01 (Count 1). In connection with and as part of this Judgment:
>
> a. Pursuant to A.R.S. § 12-1831, the Court hereby adjudges and declares that the provisions in Ordinance No. 11881 establishing a differential water rate for [*the County*] are illegal and unenforceable;
>
> b. The Court permanently enjoins Defendants from enforcing the provisions in Ordinance No. 11881 that establish a differential water rate for [*the County*];
>
> c. The Court orders the individual Defendants, in their official capacities, to cause [the City] *to refund, reimburse, or credit any differential rate payments that* [*the County*] *has made* pursuant to Ordinance No. 11881

(emphasis added).

¶17       The Judgment also awarded attorney fees and costs to the County. The Judgment's fee award contains a minor typographical or transpositional error; although the court determined that a reasonable fee award was 45% of the amount the County requested, the Judgment awarded fees of $291,*179* even though 45% of $648,424 is $291,*791*.

¶18       The County timely appealed.[2] We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    Scope of Relief Granted by the Judgment

¶19       The County asserts that the superior court abused its discretion in entering a judgment that grants relief to the County but no other TW customers.

---

[2] The City filed a notice of cross-appeal, but later withdrew it.

¶20 Whether a court's judgment awarded the successful party all of the relief to which it was entitled is a question of law reviewed *de novo*. *See Ariz. St. Univ. Bd. of Regents v. Ariz. St. Retirement Sys.*, 242 Ariz. 387, 389, ¶ 7 (App. 2017) (applying *de novo* standard of review when resolving challenge to prejudgment interest rate set forth in the judgment); *see also Minority Earth Movers, Inc. v. Walter Toebe Constr. Co.*, 649 N.W.2d 397, 399 (Mich. App. 2002) (holding that whether "trial court erred in entering two [separate] judgments" on plaintiff's claim and defendant's counterclaim "instead of one judgment for the net difference" is a question of law reviewed *de novo*).

¶21 The County asserts, first, that the superior court abused its discretion in limiting the scope of the declaratory and injunctive relief granted by the Judgment to the County itself. Because the court determined that the 2021 Ordinance violated A.R.S. § 9-511.01, the County argues, the ordinance is void for all purposes and, therefore, for all TW customers. By "declar[ing] the differential rates invalid [only] as to [the] County," and "limit[ing] injunctive relief to the County only," the County maintains, the judgment "wrongly indicates that the City's differential rates are only partially void." In effect, the County asserts, the Judgment allows the City to continue to apply the differential rates to other TW customers, thereby "continuing to benefit from" an invalid ordinance.

¶22 In response, the City argues that the court properly omitted non-parties from the scope of the injunctive and declaratory relief granted by the Judgment to the County because the County "cannot represent the interests of others."

¶23 "[I]t is a settled principle of law that as subdivisions of the state, . . . municipalities have only such legislative powers as have been expressly, or by necessary implication, delegated to them by constitution or by the legislature." *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 488, ¶ 24 (2022) (citation omitted). Any attempt by a municipality to exercise authority "without compliance with the statutory conditions precedent is . . . of no effect." *Hart v. Bayless Inv. & Trading Co.*, 86 Ariz. 379, 384 (1959); *see also Scenic Ariz. v. City of Phoenix Bd. of Adjustment*, 228 Ariz. 419, 436, ¶ 54 (App. 2011) (holding that use permit issued in violation of state statute was invalid).

¶24 A declaratory judgment holding that a municipal ordinance was adopted in violation of state law renders the ordinance void. *See Levitz v. State*, 126 Ariz. 203, 205 (1980) (holding that "an ordinance enacted without substantial compliance with [applicable] statutory requirements is

void"). To hold that an ordinance is void only as to the parties to the litigation is a contradiction in terms; if void, an ordinance is necessarily void for all purposes. *Hart*, 86 Ariz. at 392 (holding that ordinances adopted without compliance with state statute were "void and of no effect"); *see also Blankenship v. City of Richmond*, 49 S.E.2d 321, 325-26 (Va. 1948) (after gas station was established in residential neighborhood pursuant to rezoning ordinance, neighbors sued to have ordinance declared void as to any future commercial development; rejecting neighbors' argument that the rezoning ordinance was "valid as to" the gas station "but void as to all other property in the block," the court held that the ordinance was "either valid in its entirety or it is wholly void"). Likewise, an injunction barring a government entity from enforcing an ordinance on grounds that it is void cannot properly be limited in application only to the plaintiff, leaving the government entity free to enforce the void ordinance against non-parties. *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 951 (N.D. Ill. 2017) (issuing preliminary injunction against enforcement of certain conditions on eligibility for federal aid to local law enforcement, and giving injunction nationwide scope since "there [is] no reason to think that the legal issues present in this case are restricted to [the plaintiff] or that the [government's] statutory authority" to enforce the challenged conditions "would differ in another jurisdiction"); *cf. County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017) (rejecting defendant's argument that injunction against enforcement of unconstitutional executive order "should be issued only with regards to the plaintiffs" since the order was "unconstitutional on its face, and not simply in its application to certain plaintiffs").

¶25 To be sure, a court has broad discretion in fashioning declaratory and injunctive relief, and may, under proper circumstances, narrow the scope of such relief to a particular litigant or class of persons. *See Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 210, ¶ 8 (App. 2010) ("Fashioning an equitable remedy is within the trial court's discretion."). But here, neither Count One of the Complaint nor the ruling granting summary judgment on that count purported to apply only to the County. On the contrary, Count One sought a declaration that the 2021 Ordinance "violates A.R.S. 9-511.01" and "injunctive relief enjoining [the city] from enforcing" it. The effect of the court's determination that the 2021 Ordinance was adopted in violation of state law is to void the ordinance, which necessarily bars the City from enforcing it against anyone. The Judgment should therefore be amended to declare the provisions in Ordinance No. 11881 establishing differential water rates to be void as to all TW customers, and to enjoin the City from enforcing those differential rates against any TW customer.

¶26        The County next argues that the Judgment improperly required the City to refund to the County, but not to anyone else, the excess payments received as a result of its prior enforcement of the invalid differential rates. According to the County, the City has no "moral or equitable justification for retaining the millions in fees it unlawfully collected" from TW customers in unincorporated areas of Pima County "under its differential rate ordinance." In response, the City argues that the court correctly declined to order a refund of excess payments to TW customers living in unincorporated areas of Pima County, asserting that the County never asserted a claim for a refund of overpayments until it lodged its proposed form of judgment.

¶27        On this point, we agree with the City. The County's Complaint sought only forward-looking injunctive and declaratory relief; it made no request for a refund of overpayments, an award of restitution, an order of disgorgement, or any other monetary relief. The court's grant of injunctive and declaratory relief did not, by itself, encompass monetary relief as well. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d 1111, 1121 (9th Cir. 2011) ("Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement.") (cleaned up). Because neither Count One nor the County's successful motion for summary judgment requested restitution, disgorgement, or any other monetary relief, the court properly declined to include a provision in the Judgment requiring the City to refund overpayments received from TW customers living in unincorporated areas of Pima County.[3]

## II.        Award of Attorney Fees

¶28        The County submitted an application for a fee award of $648,424 under A.R.S. § 12-348.01, which provides that the court "shall award reasonable attorney fees to the successful party" in a suit between government entities such as a city and a county. The County's application was supported by an affidavit of counsel and billing records containing over 1,400 separate time entries reflecting work performed by attorneys and paraprofessionals. Finding that "excessive lawyer time was devoted to this case," the court disallowed 40% of the County's overall fee request "to

---

[3] Indeed, because the Complaint did not request any refund of overpayments, the grant of summary judgment on Count One did not entitle the County itself to such relief. However, no party has challenged the provision of the Judgment ordering the City to refund the County's overpayment, so we will not disturb that portion of the Judgment.

reflect excessive work." The court also found that, "while [the County] prevailed on the main issue," the County "did not prevail entirely," noting that it was unsuccessful "on both [its] equal protection [claim] and its ability to represent the interests of other ratepayers." "A reasonable deduction for the result obtained," the court determined, "is 15%." The court therefore awarded the County $291,179, or roughly 45% of the requested amount.

¶29 The County challenges the sufficiency of the amount of fees awarded, arguing that the court "abused its discretion in reducing the County's requested fees [*sic*] award by approximately 55%." The County maintains that its counsel provided the services that "would have been undertaken by a reasonable and prudent lawyer" and that the City's "generalized" objections to its fee request were "legally deficient." Moreover, the County contends, the court's refusal to award fees for time its counsel spent on unsuccessful claims was contrary to the principle that when "a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories." *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189 (App. 1983). The County asks that the fee award be set aside, and the matter remanded for a new determination of an appropriate fee award.

¶30 As the City correctly argues in response, however, the superior court has broad discretion in determining a fee award because that court is "in the best position to assess the value of the legal work performed and the reasonableness of the fees." *Parker v. McNeill*, 214 Ariz. 495, 499, ¶ 24 (App. 2007); *see also China Doll*, 138 Ariz. at 189 ("[A]n appellate court is somewhat unsuited for the fact-finding inquiry which is frequently necessary to properly determine reasonable fees for legal services rendered."). The court's discretion is certainly broad enough to determine whether fees for unsuccessful claims or theories are properly compensable. *See Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 14, ¶ 23 (App. 2011) ("When a case involves several claims based upon different facts or legal theories . . . the court may decline to award fees for those unsuccessful separate and distinct claims.") (citation omitted). As long as there is a "reasonable basis for the award," the court does not abuse its discretion in determining a fee request. *Hawk v. PC Village Ass'n, Inc.*, 233 Ariz. 94, 100, ¶ 19 (App. 2013).

¶31 Here, the court's thoughtful explanation for its decision to reduce the amount of fees requested by the County makes clear that it considered all relevant factors. While we may have reached a different decision in the first instance, we cannot conclude that the court's decision was without a reasonable basis. *See id.* at 100, ¶ 21 ("Though reasonable

minds may have balanced the factors differently, we cannot say that the superior court's decision was an abuse of discretion.").

¶32      The County next asserts that the court "miscalculated" the fee award by "double-counting" some of the fee reductions. The County explains that the court calculated the fee award by first applying the 40% reduction for "excessive" lawyer time to the original $648,424 fee request, disallowing fees of $259,370 ($648,424 x .40 = $259,370) and leaving a remainder of $389,054.40 ($648,424 - $259,369.60 = $389,054.40). Next, the court applied the 15% reduction for the County's lack of success on certain claims. But the court applied the 15% reduction to the original $648,424 fee request even though the court already disallowed 40% of those same fees. By applying the 15% reduction to the $648,424 original fee request, the court reduced the County's fees by an additional $97,264 ($648,424 x .15 = $97,264). Had the court applied the 15% reduction only to the $389,054.40 remaining after the initial 40% reduction, it would have only reduced the County's fee award by an additional $58,358.16 ($389,054.40 x .15 = $58,358.16). Applying the 15% reduction to the $389,054.40 remaining after the initial 40% reduction would have resulted in a fee award of $330,696.24 ($648,424 - $259,369.60 - $58,358.16 = $330,696.24), or almost $40,000 more than the amount the court awarded.

¶33      In response, the City contends that the court's determination that the original $648,424 fee request should be reduced by 40% to account for excessive work and by another 15% to account for fees incurred on unsuccessful claims evinces an intent to disallow a total of 55% of the claimed fees. As a result, the City concludes, the County was entitled to a fee award of only $291,791 ($648,424 - 55% = $291,791).

¶34      We see merit in the County's assertion that applying both the 40% reduction and the 15% reduction to the original $648,424 fee request created the risk, if not the likelihood, of double-counting fee reductions. The superior court made no finding that excessive lawyer time was devoted only to the County's successful claim, nor does the record suggest a basis for such a finding. Presumably, therefore, some of what the court found to be "excessive lawyer time" was spent litigating the County's unsuccessful claims. If fees resulting from excessive lawyer time incurred in litigating unsuccessful claims were encompassed in both the 40% "excessive time" reduction and the 15% "unsuccessful claims" reduction, then, as the County argues, those fees were disallowed twice.

¶35      Nonetheless, as the City correctly points out, the court did not state whether its finding of excessive lawyer time applied to both the

County's successful and unsuccessful claims, and we cannot discern the court's intent in that regard. If the court's intent was to disallow 40% of the County's claimed fees due to excessive work on all claims and then disallow 15% of the remainder to eliminate fees which, though reasonable in amount, were nonetheless non-compensable because they were incurred in connection with the unsuccessful claims, then the Judgment's fee award should be increased to $330,696 ($648,424 - 40% = $389,054 - 15% = $330,696). By contrast, if, as the City contends, the court intended to disallow 55% of the County's claimed fees, the Judgment's $291,179 fee award should be modified to $291,791 ($648,424 - 55% = $291,791) to correct the minor typographical or transpositional error. Because the court's intent is not apparent from the record, we cannot determine which of these two modifications would give effect to the court's intent. We will, therefore, remand with directions to the court to clarify its intent by modifying the $291,179 fee award to either $291,791 or $330,696.

¶36        Finally, both parties request an award of attorney fees on appeal under A.R.S. § 12-348.01. Because each party has prevailed on some of its arguments, we conclude that there is no "successful party" within the meaning of A.R.S. § 12-348.01, and therefore each side shall bear its own fees and costs. *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 134, ¶ 30 (2020) (denying fees under A.R.S. § 12-348.01 in "a split decision" in which each party prevailed on some claims).

### CONCLUSION

¶37        For the foregoing reasons, we affirm in part and reverse in part and remand with instructions for the superior court to amend the Judgment to extend the scope of its injunctive and declaratory relief to include TW customers in unincorporated Pima County, and to clarify its intent with respect to the deductions it found appropriate and modify the Judgment's $291,179 fee award accordingly.

