819 P.2d 487

**William JACHIMEK and Harvard Square Associates Limited Partnership, Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Frederick Martone, a judge thereof, Respondent,**

**The CITY OF PHOENIX, Real Party in Interest.**

**William JACHIMEK and Harvard Square Associates Limited Partnership, Plaintiffs–Appellants,**

v.

**The CITY OF PHOENIX, Defendant–Appellee.**

Nos. CV–91–0086–PR, CV–91–0373–AP.

Supreme Court of Arizona, En Banc.

Nov. 7, 1991.

**318**

Horne, Kaplan and Bistrow Thomas C. Horne, Phoenix, for petitioners.

Roderick G. McDougall, Phoenix City Atty., Edward P. Reeder, Asst. Phoenix City Atty., Phoenix, for City of Phoenix.

Laura Speck Havens, Phoenix, for amicus curiae Consortium for the Homeless.

## OPINION

GORDON, Chief Justice.

William Jachimek and Harvard Square Associates Limited Partnership (collectively Jachimek) petitioned for review of the court of appeals' order declining to accept jurisdiction over Jachimek's special action. Jachimek also filed an appeal in the court of appeals asking for review of the same issues. We transferred the appeal to the Supreme Court and consolidated it with the petition for review. We accepted jurisdiction to determine whether a City of Phoenix (City) ordinance that requires pawn shops in the "Inebriate District" to obtain a use permit, even though pawn shops are a permitted use in the C–2 zone, violates the uniformity requirement of A.R.S. § 9–462.-01(C). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Sp. Act. 8, 17B A.R.S.

## FACTUAL AND PROCEDURAL BACKGROUND

Jachimek owns a building that he wished to lease for use as a pawn shop. The property is zoned commercial C–2, and pawn shops are normally a permitted use in a C–2 zone. *See* Phoenix City Code, Ch. IV, § 417. In 1981, however, the City passed an ordinance (the Ordinance) adding section 109(A)(7)(c) to the Phoenix Zoning Ordinance. The Ordinance created an "Inebriate District" in the area bounded by 19th Avenue, McDowell Road, 20th Street, and Buckeye Road. It required use permits for various uses in this area, including pawn shops, that otherwise would be permitted uses in a C–2 district.[1]

When the City denied Jachimek's application for a use permit, he sued to have the Ordinance declared invalid. On cross motions for summary judgment, the trial court granted the City's motion and upheld the Ordinance. The court found that the Inebriate District "is in fact and in law an overlay zone." The court concluded, however, that the Ordinance does not violate the uniformity requirement because the City has the power under A.R.S. § 9–462.-01(A)(1) and the slum clearance and redevelopment statutes to create a unique district. Jachimek filed a special action in the court of appeals, but that court declined to accept jurisdiction.

## DISCUSSION

■ Jachimek argues that the Ordinance treats C–2 property in the Inebriate District differently than C–2 property anywhere else in the City. Therefore, he contends that the Ordinance is invalid because it violates the uniformity requirement of A.R.S. § 9–462.01(C). We agree.

■ Because municipal zoning authority comes from the state, "the power must be exercised within the limits and in the manner prescribed in the grant and not otherwise." *City of Scottsdale v. Scotts-*

---

1. Other uses requiring a use permit are establishments selling alcohol, second hand stores, blood banks and plasma centers, day labor hiring and transportation centers, charity dining halls, missions, welfare activities, hotels and motels, rooming houses, boarding houses, and dormitories.

*dale Associated Merchants, Inc.*, 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978) (citing *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 439 P.2d 290 (1968)); *see Hart v. Bayless Inv. & Trading Co.*, 86 Ariz. 379, 384, 346 P.2d 1101, 1105 (1959). Cities must strictly comply with the statute delegating them the authority to act. *Scottsdale Associated Merchants*, 120 Ariz. at 5, 583 P.2d at 892; *see Hart*, 86 Ariz. at 390, 346 P.2d at 1109. Any attempt to exercise the zoning authority without complying with the statutory conditions is void. *Hart*, 86 Ariz. at 384, 346 P.2d at 1105. With these general principles in mind, we must examine whether the City has authority to require use permits for pawn shops on C–2 property in the Inebriate District while not requiring them for pawn shops on C–2 property in other parts of the City.

### I. *A.R.S. § 9–462.01(C)*

Section 9–462.01(C) provides that *"[a]ll zoning regulations shall be uniform for each class or kind of building or use of land throughout each zone, but the regulations in one type of zone may differ from those in other types of zones."* (Emphasis added.) The obvious purpose of a statutory uniformity requirement "is to assure property owners that there shall be no improper discrimination, all owners of the same class and in the same [zone] being treated alike...." *Bartsch v. Planning & Zoning Comm'n of Trumbull*, 6 Conn. App. 686, 689, 506 A.2d 1093, 1095 (1986) (citation omitted); *see* 1 N. Williams & J. Taylor, *American Planning Law: Land Use and the Police Power* § 31.01 (1988 Rev.) (statutory uniformity requirements represent "a reenactment in statutory form of the general principle underlying the equal protection clause—that all land in similar circumstances should be zoned alike, and that differential treatment must be justified by a showing of different circumstances justifying such treatment").

The City argues that the Ordinance does not violate the uniformity requirement because it does not establish a "special zone." Rather, the Ordinance requires a use permit *"regardless* of the zoning on the parcels upon which the use is proposed."

Thus, the City argues, "it is the *use* of property in a specific area of the city which requires that a use permit be obtained for certain uses, not the *zoning* of the property." We reject this argument because, regardless of the labels applied to the Ordinance, its effect is to require a use permit for Jachimek's C–2 property but not for C–2 property in other parts of the City. We agree with the trial court that the Ordinance "in fact and in law [creates] an overlay zone."

Creating an overlay zone and requiring a use permit for uses that are permitted without such a permit in other C–2 districts in the City violates the plain and unambiguous language of § 9–462.01(C) that "[a]ll zoning regulations shall be uniform for each class or kind of ... use of land throughout each zone." *See Henry v. White*, 194 Tenn. 192, 198, 250 S.W.2d 70, 72 (1952) (concluding that a similar uniformity requirement clearly and unequivocally forbids the city "from permitting on certain streets in a given district the use of buildings for a purpose that is forbidden everywhere else in that district."). It also violates the policy of equal treatment underlying § 9–462.01(C) because it "is exactly the arbitrary and discriminatory use of the police power which the statute was designed to prevent." *See Bartsch*, 6 Conn.App. at 690–91, 506 A.2d at 1096 (requiring a buffer between one zone of a particular classification and another zone of a different classification in one instance but not in others violates the statutory uniformity requirement).

Our conclusion that the Ordinance violates the uniformity requirement is consistent with cases from other jurisdictions that have considered similar statutes. *See, e.g., Boerschinger v. Elkay Enters.*, 32 Wis.2d 168, 173, 145 N.W.2d 108, 111 (1966) (striking down an ordinance that in effect required some rendering plants in the industrial district to obtain approval from the board of appeals while exempting the owners of one plant from seeking approval); *Carleton Tennis Assocs. v. Town of Clay*, 131 Misc.2d 522, 523–24, 500 N.Y.S.2d 908, 908–09 (N.Y.Sup.Ct.1985) (striking down an

ordinance that prohibited food and beverage service near an industrial park even though food and beverage service is generally permitted in C–5 zones).

Thus, unless some other statute provides an exception to the uniformity requirement under the facts of this case, we must declare the Ordinance invalid. We turn now to a discussion of other statutes that allegedly give the City authority to utilize the use permit procedure in the Inebriate District.

## II. A.R.S. § 9–462.01(A)(1)

■ Section 9–462.01(A)(1) authorizes cities to "[r]egulate the use of buildings, structures and land as between agriculture, residence, industry, business and other purposes." The City relies on the trial court's minute entry to support its argument that § 9–462.01(A)(1) authorizes the use permit procedure utilized in the Inebriate District.[2] The trial court found that the City could have created a new zone in the area within the Inebriate District because such a zone would be a legitimate "other purpose" under § 9–462.01(A)(1). The court also found that doing so would not violate the uniformity requirement because the zoning regulations within that unique zone would have been uniform. It then concluded that even though the City attempted to create

an overlay district rather than creating a unique zone, the creation of this overlay district does not violate the uniformity requirement because the City has the power to create a unique zone. We disagree.

Section 9–462.01(A)(1) merely authorizes the City to engage in use zoning. It does not authorize the City to create an overlay zone in which use permits are required for specified uses on property that is zoned the same as property in other parts of the City for which use permits are not required. As we determined above, such an overlay zone violates the uniformity requirement of § 9–462.01(C).[3] The uniformity requirement in § 9–462.01(C) is part of the same statutory section as § 9–462.01(A)(1). The only reasonable way to construe § 9–462.01(C), therefore, is as a limitation on the zoning authority granted to the City by § 9–462.01(A)(1). Thus, the City must comply with the uniformity requirement in § 9–462.01(C) when exercising its zoning authority.

■ The trial court found that because the City has the power to create a unique zone, it also has the power to create an overlay district such as the Inebriate District. Even assuming that the City has the power to create a unique zone,[4] we do not believe it has the power to create an overlay district in which use permits are required when the underlying zoning, which

2. The City also argues that zoning involves more than the mere classification of property, *see Wait v. City of Scottsdale*, 127 Ariz. 107, 109, 618 P.2d 601, 603 (1980), and that cities "may control the location of ... commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city," *see Young v. American Mini Theatres*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). *Wait* and *Young*, however, are not relevant to our resolution of this case because they both addressed the constitutionality of zoning ordinances; they did not decide whether the ordinances violated a statutory uniformity requirement.

3. We recognize that § 9–462.01(A) does provide four exceptions to the uniformity requirement. Section 9–462.01(A)(8) to (A)(11) authorizes overlay districts in which regulations may differ from those for the same zones elsewhere in a city. The statute authorizes overlay districts for "floodplain zoning districts"; districts "characterized by adverse topography, adverse soils, subsidence of the earth, high water table, lack of water or other natural or man-made haz-

ards"; "districts of historical significance"; and "age specific community zoning districts." Because the Inebriate District does not fit within any of these categories, the City lacks authority to create a special overlay district in this area. *Cf. Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982) ("A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.") (citations omitted).

4. Because the City has not attempted to create a unique zone in the Inebriate District, we express no opinion on whether it has the power to create such a zone. We do note, however, that § 9–462.01(B) provides that "the legislative body may divide a municipality, or portion of a municipality, into zones of the number, shape and area it deems best suited to carry out the purpose of" the municipal planning and zoning statutes.

the City did not attempt to change, does not require use permits. The City's power to create a unique zone is not relevant to determining whether it may create an overlay district without changing the underlying zoning because the City may have the power to create a unique zone and nonetheless lack the power to create an overlay district. Moreover, permitting the City to create an overlay district merely because it *could have* created a unique zone would violate the rule that cities must strictly comply with the zoning enabling statutes. *See Scottsdale Associated Merchants*, 120 Ariz. at 5, 583 P.2d at 892; *Hart*, 86 Ariz. at 390, 346 P.2d at 1109.

### III. *A.R.S. § 9-462.01(C)(1)*

■ Section 9-462.01(C)(1) provides in part that: "Within individual zones, there may be uses permitted on a conditional basis under which additional requirements must be met, such as, but not limited to, requiring site plan review and approval by the planning agency." The City argues that because this paragraph appears in § 9-462.01(C), the uniformity section of the statute, requiring use permits in the Inebriate District is consistent with the uniformity requirement. We disagree.

Section 9-462.01(C)(1), when read in context with § 9-462.01(C), authorizes the City to *uniformly* require use permits for specified uses within a zone. It does not authorize the City to require use permits for property in one part of a zone but not for property in another part of the same zone. Thus, although the City may have the power to require use permits for pawn shops throughout the C-2 zone, it cannot require use permits for pawn shops on C-2 property in the Inebriate District while not requiring use permits for pawn shops on C-2 property in other parts of the City.

### IV. *A.R.S. §§ 36-1471 to 36-1491*

■ The City argues that the slum clearance and redevelopment statutes, A.R.S.

§§ 36-1471 to 36-1491, authorize the City's use permit procedure because the legislature intended to give cities additional power to control slum and redevelopment areas in addition to the zoning powers that existed before the slum clearance and redevelopment statutes were adopted. We disagree.

Section 36-1490 provides that "[t]he powers conferred by this article shall be in addition and supplemental to the powers conferred by any other law." We do not believe, however, that these additional powers include the power to implement a use permit procedure that violates the uniformity requirement of § 9-462.01(C). Rather, the additional powers the legislature contemplated were the powers to acquire property, to improve the property acquired, to dispose of the property acquired, and to provide other assistance in connection with these functions. *See* A.R.S. § 36-1472(4) (declaring that these functions "are public uses and purposes for which public money may be expended and the power of eminent domain exercised"); *see generally* A.R.S. §§ 36-1471 to 36-1491.

The legislature did provide that any public body [5] may zone or rezone *"[w]here otherwise authorized to perform functions of a similar character."* § 36-1487(A)(7)(c) (emphasis added). Cities are "otherwise authorized" to zone and rezone by the municipal zoning enabling statutes, §§ 9-462 to 9-462.08. The "where otherwise authorized" language, however, indicates that the City must comply with the zoning enabling statutes, including § 9-462.01(C), when it zones or rezones property to aid its redevelopment projects. Thus, the slum clearance and redevelopment statutes do not provide an exception to the uniformity requirement of § 9-462.01(C).

### DISPOSITION

We reverse the trial court's order granting the City's motion for summary judg-

---

5. The term "public body" includes, among other things, incorporated cities and towns. *See*

A.R.S. § 36-1471(9) & (12).

ment, vacate the court of appeals' order declining to accept jurisdiction, and declare the Ordinance invalid. We remand this case to the trial court for proceedings consistent with this opinion.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.