SMrrH, J.
The plaintiff, KCI Management Corporation (“KCI”), brings this motion for summary judgment on count II of its first amended complaint. That count seeks an order invalidating part of Article 29 of the Boston Zoning Code (“Code”). For the following reasons, plaintiffs motion is granted, and Article 29, Section 29-6 of the Code is declared invalid in its entirety.
FACTS
The following facts are undisputed. Plaintiff, KCI, owns 7.22 acres of land in the Hyde Park section of Boston. Part of the parcel abuts Turtle Pond Parkway, a scenic highway in a Greenbelt Protection Overlay District (“GPOD”). Because part of the parcel is within the GPOD, the entire parcel is considered within the GPOD. KCI sought to subdivide the parcel into twenty-three (23) single-family lots (“Project”). Each lot would exceed the 6000 square feet minimum requirement under Article 13, Section 13.1 of the Code. KCI planned to commence building of residential homes on the property in late 1996. On November 8, 1996, KCI submitted an application with the Inspectional Services Commissioner, City of Boston, for a building permit. On November 15, 1996, the Inspectional Services Commissioner refused to grant the permit to KCI and informed KCI of the need to obtain a conditional use permit pursuant to Articles 29 and 6 of the Code.
On November 25,1996, KCI appealed the Inspectional Services Commissioner’s ruling on the permit. On March 4, 1997, the Board of Appeals of Boston (the “Board”) denied KCI’s appeal of the Inspectional Services Commission decision on the permit, and also denied KCI’s application for a conditional use permit to commence the Project. On April 11, 1997, the Board signed a written decision affirming both of these rulings. The Notice of Decision was issued on May 7, 1997. KCI brought this appeal from the decision of the Board under Boston Zoning Enabling Act (“Enabling Act”), Section 11, St. 1956, c. 461, §2.
This case involves the interaction of Section 2 of the Enabling Act and Articles 8, 29, and 6 of the Code.
I. Section 2 of the Boston Zoning Enabling Act
The Enabling Act establishes the scope of the Board’s authority to enact by-laws controlling the uses of land in the City of Boston. Section 2 establishes the power of the City to divide the city into uniform zoning districts. It states in relevant part:
For any and all of such purposes a zoning regulation may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings and structures, or use of land, and may prohibit noxious trades within the city or any specified part thereof. The regulations and restrictions shall be uniform for each class or kind of buildings, structures or land, and for each class or kind of use, throughout the district, but the regulations and restrictions in one district may differ from those in other districts. Due regard shall be paid to the characteristics of the different parts of the city: and *276 regulations and restrictions shall be the same for zones, districts or streets having substantially the same character. St. 1958, c. 461 §2 (emphasis added).
This provision is analogous to Section 4 of the state Zoning Act.[2]
II.Article 8 — Regulation of Uses
Article 8 establishes what are “Allowed," “Conditional,” and “Forbidden” uses for properties within different districts of Boston. The property in question is located within an “S” district (S-5). Within an “S” district there are 19 “Allowed” uses of property, out of 113 possible “Allowed” uses. Several of the 19 uses are: single-family housing, residential home construction, group residence, school, nonprofit libraries, storage facilities, garages, and police or fire stations. There are a substantial number of uses within an “S” district that are “Forbidden.” They include two-family housing, hospitals, nursing homes, restaurants, offices, and industrial uses. The Project in this case calls for single-family detached dwellings, occupied by not more than one family, which is an use “Allowed” as of right.
III.Article 29 — Greenbelt Protection Overlay District
The property in question is also located within the Greenbelt Protection Overlay District under Article 29 of the Code. The GPOD was established as a special purpose overlay district. These districts consist of parts of numerous districts and are established under Article 3[3] of the Code. Any parcel of land which abuts any roadway within the GPOD, subjects the whole parcel to Article 29. According to its terms, the GPOD was established to preserve the amenities of Boston, enhance the air quality, supply open space with vegetation, and to protect the Greenbelt Roadways from traffic congestion.
Article 29, Section 29-4, establishes that any applicant seeking a building permit for exterior construction or alteration for a project within a GPOD must apply for an Article 29 conditional use permit, if the applicant seeks to erect one or more buildings or structures having a total gross floor area in excess of 5,000 square feet. The Project in this case calls for the construction of structures whose total area exceeds 5,000 square feet, making Article 29’s conditional use permit requirements applicable.
Article 29, Section 29-6, sets out the requirement for obtaining a conditional use permit. The applicant for the permit must:
“show that the Proposed Project complies with the following standards in addition to the standards set forth in Article 6: (a) provision for adequate vehicular access, off-street parking and loading and shall not have significant adverse effect on traffic and parking on the Greenbelt Roadway and adjacent streets; (b) provision for landscaping treatment that ensures that the natural and aesthetic quality of the Greenbelt Roadway area will be maintained; (c) provision for the design of all structures that is compatible with surrounding neighborhood.” Section 29-6 (emphasis added).
There are, therefore, three criteria within Article 29 along with the provisions of Article 6 that must be met in order to obtain a conditional use permit.
IV.Article 6 — Conditional Uses
The Article 6 criteria for conditional use permits are located in Section 6-3 — Conditions Required for Approval. The criteria used in Section 6-3 include: whether the use will adversely affect the neighborhood, whether there will be serious hazard to vehicles or pedestrians from the use, and whether the site is an appropriate location for the use.
The plaintiff seeks summary judgment, asserting that the interaction of Section 2 of the Enabling Code and Articles 6, 8, and 29 create a zoning system that is contrary to the law of the Commonwealth. The defendant contests this assertion and has also raised a statue of limitations argument in opposition to the motion.
DISCUSSION
The plaintiff asks this Court to grant summary judgment in its favor pursuant to Rule 56 of the Massachusetts Rules of Civil Procedure. Rule 56 provides a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). A court will grant summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Id.; Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The plaintiff challenges the validity of a portion of a zoning by-law. The general rule is that the local regulations enacted pursuant to enabling statutes are presumed valid. Beard v. Salisbury, 378 Mass. 435, 439 (1979). A court will not hold a regulation invalid unless it is found to be unreasonable or arbitrary, or substantially unrelated to the public, health, safety, convenience, morals or welfare. National Amusements, Inc. v. Boston, 29 Mass.App.Ct. 305, 309-10 (1990). A by-law may also be found invalid if it oversteps the bounds of the enabling statute. Beard, 378 Mass. at 440. Finally, in general, to avoid invalidation, a zoning by-law is to be construed so as to avoid unreasonable results. Marshall v. Topsfield, 13 Mass.App.Ct. 425, 428 (1982).
The plaintiff brings this motion for summary judgment based on its assertion that the portion of GPOD *277 provisions, Section 29-6, that requires landowners to meet the requirements of Article 6 of the Code, violates the rule of law established in SCIT, Inc. v. Planning Board of Braintree, 19 Mass.App.Ct. 101 (1984). In addition, the plaintiff claims that the Article 6 standards are not rationally related to the purposes of the GPOD regulations.[4] The defendant, in response, argues that plaintiffs claim is time-barred by the terms of the Boston Zoning Enabling Code, Section 10A. The defendant also argues that Section 29-6 of Article 29 does not violate the rule of law established in SCIT.
I. Plaintiffs claim is not time-barred.
The first issue that must be disposed of is the defendant’s contention that this motion is time-barred by the Enabling Act, Section 10A. Section 10A states in relevant part:
“any person aggrieved by a decision of the zoning commission approving a zoning map amendment or a zoning regulation or amendment thereof. . . may appeal such decision to the superior court . . . provided, however that such appeal is filed in said court within thirty days after such decision became effective in accordance with the provisions of Section three” (emphasis added).
The defendant contends that this language, in essence, puts a 30-day statute of limitations on claims to challenge the Board’s approval of zoning regulations or amendments, even if a person is not aggrieved by the decision until many years later.[5]
The provision in question in this case, Article 29, Section 29-6, became effective June 1, 1987. The Complaint, in this case was filed in May 1997. Under the defendant’s interpretation of the statute, the motion for summary judgment was filed almost ten years late. While the defendant acknowledges that this may be a harsh result, the defendant correctly contends that Massachusetts courts have been very strict when policing zoning statutes of limitations. See Cappucino v. Zoning Board of Appeals of Spencer, 398 Mass. 304, 312 (1986), quoting Pierce v. Board of Appeals of Carver, 369 Mass. 804, 808 (1976).
The plaintiff opposes defendant’s statute-of-limitations argument on two grounds. First, the plaintiff states that its claim is brought under Section 11 of the Enabling Act. The plaintiff reiterated this in oral argument, when he contested defendant’s characterization of the claim as a claim under Section 10A. Section 11 provides in relevant part:
“any person aggrieved by a decision of said board of appeal . . . may appeal to the superior court department of the trial court sitting in equity for the county of Suffolk . . . the court shall hear all pertinent evidence and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the authority of such board or make such other decree as justice and equity may require" (emphasis added).
This section gives broad powers to the Superior Court in these matters. Included within this discretionary power is the power to declare a section or regulation, upon which a decision by the board was based, void if necessary. The plaintiff properly complied with the time requirements of Section 11, and under the plaintiffs interpretation this motion is appropriately before the court.
The plaintiff argues, in the alternative, that he was not “aggrieved” under Section 10A until the decision was handed down by the board. As such, the plaintiff would be within the statutory time period for filing a Section 10A claim. The plaintiff argues that the defendant’s interpretation of Section 10A would force every landowner in the City to sue within thirty days after the enactment of every regulation. The plaintiff was not even a landowner at the time of the enactment of the provision. The S. J.C., while not directly addressing this issue, used rationale in Lopes v. City of Peabody, 417 Mass. 299 (1994),[6] which seems applicable to the present issue. In Lopes, the court indicated that:
“A rule that a purchaser of real estate take subject to all existing zoning provisions without any right to challenge any of them would threaten the free transferability of real estate, ignore the possible effects of changed circumstances, and tend to press owners to bring actions challenging any zoning provision of doubtful validity . . "Id. at 303.
The plaintiffs motion should not be dismissed as untimely. The Court finds both of the plaintiffs arguments persuasive in this instance. The plaintiffs motion was appropriately brought under Section 11 of the Enabling Act. The Superior Court has the authority, under Section 11, to fashion a remedy that “justice and equity” require to correct a decision by the Board. Logically, this would include declaring void a regulation or amendment upon which the Board’s decision was based.
Even if the motion is considered to be brought under Section 10A, the defendant’s narrow reading of Section 10A is contradictory to the general principles expressed in Lopes, and is not supported by logic or mandated by case law. The defendant has correctly stated that Massachusetts courts will strictly police the time restraints of zoning statute of limitations, but the cases do not dictate that the most restrictive interpretation possible of statutory language be employed. In this case the plaintiffs contention that he was not “aggrieved” until the April 11,1997 decision by the board is the appropriate interpretation of Section 10A, and as such his claim would meet the Section 10A time requirements.
II. Section 29-6 of Article 29 violates the uniformity requirements of Section 2 of the Enabling Code and the principles established in SCIT. [7]
The second issue in this case is a close question. The plaintiff contends that the portion of Article 29, Section 29-6 of the Code, which makes the requirements of *278 Article 6 applicable to the proposed Project of the plaintiff, is violative of Massachusetts law and as such should be declared invalid. According to the plaintiff, the GPOD turns a use “as of right” into a conditional use, a practice that was struck down in SCIT. See also Prudential Ins. Co. of America v. Board of Appeals of Westwood, 23 Mass.App.Ct. 278 (1986) (applying SCIT). In addition, the plaintiff claims a lack of a rationale relationship between the conditional use requirements of Article 6 and the purposes of Article 29 (see Footnote 4, infra).
A.The SCIT case.
In SCIT, the Appeals Court invalidated a Braintree zoning by-law, §135-604, which made all uses within a business district conditional on the issuance of a discretionary permit. SCIT, 19 Mass.App.Ct. at 107-110. The court found that §135-604 requiring a discretionary permit for all uses within a business district, was logically inconsistent with the subsequent by-law, §135-605 allowing certain uses “as of right” within the district. SCIT, 19 Mass.App.Ct. at 107. The court could not reconcile these two provisions. SCIT, 19 Mass.App.Ct. at 107. The court struck down the discretionary permit section relying on the uniformity requirement of Mass. G.L.c. 40A, §4.[8] SCIT, 19 Mass.App.Ct. at 107. The court reasoned that G.L.c. 40A, §4, mandates that “all land in similar circumstances should be treated alike, so that if anyone can go ahead with a certain development [in a district], then so can everyone else.” SCIT, 19 Mass.App.Ct. at 107. The court further stated that G.L.c. 40A, §4, would not allow a district with uses authorized “as of right” to be subject to a local zoning board with “roving and virtually unlimited power to discriminate as to uses between landowners similarly situated.” SCIT, 19 Mass.App.Ct. at 108.
The SCIT court also relied on Mass. G.L.c. 40A, §9, which is the special permits section of G.L.c. 40A. SCIT, 19 Mass.App.Ct. at 109. The court determined that §135-604’s conditioning of all uses in the district on a special permit went beyond the power of the special permit provision. SCIT, 19 Mass.App.Ct. at 109-110. Section 135-604 violated the permit provision because it did not limit itself to uses which “would be incompatible in a particular district unless conditioned in a manner which makes them suitable to a given location.” SCIT, 19 Mass.App.Ct. at 109.
The plaintiff claims that SCIT is applicable in the present case because the zoning system structure within the Code is similar to the Braintree system and because the uniformity requirement of Section 2 of the Boston Zoning Enabling Act is the same as the uniformity requirement found in G.L.c. 40A. Article 8 of the Code allows, “as of right,” the construction of single-family detached residences. Article 29 then makes all uses with a total gross floor area of over 5000 square feet contingent on a conditional use permit, which must meet the three conditional use requirements of Section 29-6 as well as the additional requirements of Article 6. The plaintiff also argues that Article 29 violates SCJTs application of G.L.c. 40A, §9’s special permit rule because Article 29 makes all uses “as of right” conditional. The plaintiffs final argument is that Article 6’s conditional use requirements are not rationally related to the purposes of Article 29, and they, therefore, cannot be applied to conditional use permits under Article 29.
B.Overlay Districts[9]
Overlay districts present a new problem in zoning by-laws. The overlay districts are not Euclidian[10] districts unto themselves, but are superimposed over portions of several districts. Overlay districts modify the portions of the underlying districts based on the nature of the overlay. For example, environmental protection overlay districts have been created to enforce the requirements of the Wetlands Protection Act, Mass. G.L.c. 131, §40. The over-arching environmental scheme of Mass. G.L.c. 131, §40 gives power to municipalities to protect the wetlands through zoning by-laws that prohibit activities on the wetlands that “might otherwise be permitted on the parcel or elsewhere.” Southern New England Conf. Association of Seventh-Day Adventists v. Burlington, 21 Mass.App.Ct. 701, 706 (1986). The City of Boston has numerous overlay districts, including urban renewal areas, restricted and limited parking areas, flood hazard areas, and the GPOD. Unlike overlay districts set up pursuant to the statewide Wetlands Act, these overlay districts were created pursuant to Section 3-1A of the Boston Zoning Code. They were not created pursuant to an over-arching state environmental or regulatory scheme. The GPOD was passed to protect the aesthetics, air quality, and congestion around the greenbelt roadways of Boston. As noted above, Section 3-1A of the Code indicates that in “an overlay district the regulations specified for the base subdistrict shall apply, insofar as they are not in conflict with special regulations for a particular overlay district.”
C.Article 29 violates SCIT
The plaintiff argues that Article 29 violates the rules established in SCIT. But, according to the defendant, the establishment of the GPOD is merely the fine tuning of the existing regulatory scheme. It created a new district to protect the green spaces of Boston by establishing threshold levels of construction, above which approval by conditional use permit is required. The defendant claims the overlay districts are not arbitrary, but rather lay out uniform regulations for similarly situated land. The defendant also contends that the zoning regulations are consistent with the standard for special permits outlined in SCIT because they do not restrict all uses, but only uses that would be incompatible in the district.
1. GPOD violates the uniformity requirements of SCIT.
The GPOD requirements transforming uses “as of right” into conditional uses violate the uniformity requirements of Section 2 of the Enabling Act. Section 2 *279 allows the City to create uniform districts and makes no exception to this uniformity requirement for overlay districts. Therefore, the inconsistency between Section 8’s uses “as of right” and Section 29’s conditional use provisions has to be resolved in favor of uniformity.
In Prudential the Appeals Court, explaining SCIT, established that “it has been well settled since the decision in SCIT . . . that a use allowed as of right cannot be made subject to the grant of a special permit inasmuch as the concepts of a use as of right and a use dependent on discretion are mutually exclusive.” 23 Mass.App.Ct. at 281. The use in the present case— construction of single family residential homes — is a use allowed “as of right” under the terms of Article 8, but Article 29 then makes this a conditional use if the gross floor area is greater than 5000 sq. ft. No such restriction applies to a “S-5" district under Article 8. The court in SCIT said ’’all land in similar circumstances should be treated alike." SCIT, 19 Mass.App.Ct. at 107. It is obvious that the present framework sets up a zoning scheme that would allow another landowner in an “S-5" district situated right next to plaintiffs parcel, but just outside the GPOD, to build residential houses without a conditional use permit, where as plaintiff could not.
Massachusetts courts have not yet examined the application of overlay districts in the manner now presented, but the issue has been addressed in at least one state. In Jachimek v. Superior Court, the Arizona Supreme Court examined an ordinance that created an Inebriate District, 819 P.2d 487, 488 (Ariz. 1991). This district, which was determined to be an overlay district, made particular uses within certain sections of an industrial zone subject to a use permit. Jachimek, 819 P.2d at 488-89. The court found that “creating an overlay zone and requiring a use permit for uses that are permitted without such a permit in [identical] districts in the Ciiy violates the plain and unambiguous language of §9-462.01(0 that ‘all zoning regulations shall be uniform for each class or kind of. . . use of land throughout each zone.’ ” Jachimek, 819 P.2d at 489. The Arizona Supreme Court then went on to declare the ordinance creating the overlay zone void. Jachimek, 819 P.2d at 491-92. See also Henry v. White, 250 S.W.2d 70 (Tenn. 1952) (deciding that a uniformity requirement clearly forbids the ciiy from “permitting on certain streets in a given district the use of buildings for a purpose that is forbidden everywhere else in that district”).
The defendants’ contention that the GPOD is only a fine tuning mechanism does not relieve the burden on the City to meet the uniformity requirement. The GPOD was not created pursuant to a state environmental law that trumps the Enabling Act’s uniformity requirement, nor was it made pursuant to some explicit exception to the uniformity requirement. Other means can be employed to restrict what could be done along the GPOD, but changing the uses “as of right” into conditional uses violates the uniformity requirement.[11]
2. Article 29 leaves only de minimis uses “as of right,” which is insufficient to meet SCIT.
Section 29-6 eliminates virtually all uses “as of right," leaving only de minimis uses “as of right," which is contrary the principles of SCIT.[12] See SCIT, 19 Mass.App.Ct. at 109-10. All property owners within the GPOD may only build, “as of right,” without a conditional use permit, abuilding under 5,000 square feet that also meets the requirements of Article 8: Regulation of Uses. In the present action, the “as of right” uses are limited by Article 8 to the seventeen “Allowed” uses in an S-5 district, and by Article 29 to construction below 5000 square feet. This would allow for less than 695 square feet of construction per acre in this case. It is not hard to envision the GPOD overlaying a larger parcel of land in a district that allows even fewer uses “as of right," thereby restricting so-called uses “as of right” even more. The court in SCIT and the Supreme Judicial Court in Gage, 409 Mass. at 348, indicates that there needs to be at least one use “as of right” left for every zoning district. Every use within the GPOD requires a conditional use permit, if the construction is greater than the 5000 square feet ceiling, regardless of the size of the property in question. The “as of right” uses remaining within the GPOD, are limited to de minimis uses only and are insufficient to meet SCITs requirements.
3. All requirements for a conditional use permit of Article 29 are invalid.
Plaintiff stated numerous times that it does not object to all of the conditional use requirements of Section 29-6, but rather only to Section 29-6’s mandate that the Article 6 conditional use requirements be met, in addition to Section 29-6’s three conditions. Plaintiff is correct in stating that this court could strike down just a portion of Section 29-6 and leave the remaining section, but there appears to be no reason to differentiate between the three conditions required in Section 29-6 and the additional requirement of having to meet the conditional use requirements of Article 6. The first three conditional use requirements of Section 29-6 transform a use “as of right” into a conditional use in the same manner as the Section 6 requirements. The court in SCIT and Prudential focused on the transformation of uses “as of right” into conditional uses and not on specific conditions required to get the use permit. Therefore, the sections of Article 29 requiring a conditional use permit are Invalid.
ORDER
It is therefore ORDERED that the plaintiffs motion for summary judgment is ALLOWED, and Section 29-6 of Article 29 of the Boston Zoning Code is DECLARED invalid. The Court further ORDERS that the plaintiff notify the Attorney General, pursuant to Mass.R.Civ.P. 24(d), and that this Order shall be stayed for 60 days *280 to allow the Attorney General to seek intervention or to notify the Court that it does not seek to intervene.

Section 4 states: “Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structure or uses permitted.” Mass. G.L.c. 40A§4 (emphasis added).

Section 3-1A of Article 3 states in relevant part: “A subdistrict or part thereof or a contiguous group of subdistricts or parts thereof may be designated as a special purpose overlay district as follows:...(]) greenbelt protection overlay district... In an overlay district the regulations specified for the base subdistrict shall apply, insofar as they are not in conflict with special regulations specified for a particular overlay district.”

The rational relation argument has been determined by this court to be irrelevant to the final determination, so it is not addressed in this decision.

That time period begins to run immediately after the regulation or amendment becomes effective.

Lopes involved a land owner’s challenge to a zoning regulation which created an overlay district — a wetlands conservancy district. Lopes purchased the land subject to the overlay district six years after its adoption by the City of Peabody. Lopes v. City of Peabody, 417 Mass. at 300-03.

 19 Mass.App.Ct. 101 (1984).

 See footnote 2, infra.

 The issue of the constitutional validity of overlay districts has not been addressed by any appellate court in Massachusetts, but the Land Court in Tucker’s Wharf Limited Partnership v. Moxham indicated that overlay districts are appropriate, but are limited by the applicable enabling act and the Constitution. Misc. Case No. 122297 at 7-8.

 See Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926), which first upheld “Euclidian” zoning and from which the term originates.

 See Y.D. Dugout, Inc. v. Board of Appeals of Canton, 357 Mass. 25, 30-31 (1970) (while board lacks discretion to deny commercial building permit, a use as of right, if the specific area and use criteria are met, it may impose reasonable terms and conditions on the proposed use for the public protection).

 A definitive threshold for allowable uses that satisfies SCIT has not been established by any court in the Commonwealth. The Supreme Judicial Court in Gage v. Town of Egremont, 409 Mass. 345 (1991), found that provisions allowing single and two-family houses “as of right” were sufficient to satisfy SCIT. The Land Court, while not setting a minimum threshold has addressed the issue in two separate cases. In Unisys Corp. v. Town of Sudbury, the land court decided that a limitation of “as of right” uses to only 967 square feet per acre coupled with a 15-percent maximum building coverage limit was insufficient to meet SCIT. Misc. Case No. 141550 (Land Ct. 1991). The court reasoned the limitations were “shackles” on the use of the property. Id. The Land Court also decided that the uses “as of right” within Mass. G.L.c. 40A §3, which include any use for agricultural, religious or educational uses, failed to satisfy the SCIT standard. See Boch v. Barwick, 5 Land Court 16 (1997).